# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

Cory Fairfield,

    Plaintiff,

    v.                                       Case No. 23-cv-873

Waukesha County,
Sheriff Eric Severson,
    in his official capacity,
Wellpath, LLC,
Tracy Lewandowski, FNU Tamez
Temu Brown, James Matthews, and Mary Tess-Barber,
    each in his or her individual capacity,

    Defendants

## COMPLAINT

### I. NATURE OF ACTION

101. This is a civil action brought by the Cory Fairfield in order to obtain monetary damages for the life-threatening and discriminatory denial of adequate medical care and the injuries he sustained as a result of the Defendants' deliberate indifference to his serious medical needs while he was incarcerated at the Waukesha County Jail, in violation of the Americans with Disabilities Act,

the Rehabilitation Act, and the Eighth and Fourteenth Amendments to the United States Constitution.

## II.    JURISDICTION AND VENUE

201.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

202.    The Eastern District of Wisconsin is the proper venue for this action, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim asserted by the Plaintiff occurred within the geographical boundaries of Waukesha County, which is in the Eastern District of Wisconsin.

## III.    PARTIES

### A.    <u>Plaintiff</u>

301.    The Plaintiff is an adult resident of Wisconsin.

302.    The Plaintiff was incarcerated during the acts complained of, but at the time of the filing of this Complaint, he is not incarcerated.

### B.    <u>Defendant</u>

303.    Defendant Waukesha County is a Wisconsin unit of local government with the capacity to sue and be sued in this court.

304.    Sheriff Eric Severson is, on information and belief, an adult resident of Wisconsin.

305. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail in 2021, Defendant Severson served as the Sheriff of Waukesha County and was responsible for running the Waukesha County Jail.

306. During 2021, Sheriff Severson, Waukesha County and the Waukesha County Jail received federal funds.

307. Wellpath, LLC ("Wellpath") is a foreign limited liability company whose principal office is located in Nashville, Tennessee; it is registered to do business in Wisconsin.

308. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail in November, 2021, Waukesha County was contracted with Wellpath for Wellpath to provide medical care for its inmates.

309. On information and belief, Defendant Tracy Lewandowski is an adult resident of Wisconsin.

310. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail, in November, 2021, Defendant Lewandowski was employed by Waukesha County as the Deputy Jail Administrator.

311. On information and belief, Defendant FNU Tamez is an adult resident of Wisconsin.

312. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail, in November, 2021, Defendant Tamez was employed by Waukesha County as a lieutenant at the jail.

313. On information and belief, Defendant Temu Brown is an adult resident of Wisconsin.

314. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail, in November, 2021, Defendant Brown was employed as a physician to provide medical care to inmates at the Sauk County Jail.

315. On information and belief, Defendant James Matthews is an adult resident of Wisconsin.

316. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail, in November, 2021, Defendant Matthews was employed as the Nursing Site Manager for Wellpath to oversee the provision of medical care and to provide medical care to inmates at the Sauk County Jail.

317. On information and belief, Defendant Mary Tess-Barber is an adult resident of Wisconsin.

318. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail, in November, 2021, Defendant Tess-Barber was employed as a nurse for Wellpath to provide nursing care to inmates at the Sauk County Jail.

319. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail, in November, 2021, in regard to the conduct complained of herein, each individual Defendant was acting within the scope of his or her employment within the meaning of §895.46 Wis. Stats.

320. During the period of time during which Cory Fairfield was incarcerated in the Waukesha County Jail, in November, 2021, in regard to the conduct complained of herein, each individual Defendant was acting under color of state law within the meaning of 42 U. S. C. § 1983.

321. In addition to being a defendant in its own right, Waukesha County is also responsible to defend and indemnify the individual Defendants pursuant to Wisconsin Statute § 895.46.

## IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. Opioids are a class of drugs that inhibit pain.

402. Although they can be addictive, many opioids have legitimate medical uses, including chronic pain management.

403. Other opioids, such as heroin, are not generally used in medicine in

the United States but are sold illegally.

404. Opioid use disorder is a chronic brain disease with potentially deadly complications.

405. Symptoms of opioid use disorder include cravings of opioids, increased tolerance to opioids, an inability to stop using opioids, withdrawal symptoms, and a loss of control.

406. Like other chronic diseases, opioid use disorder often involves cycles of relapse and remission.

407. Without treatment, patients with opioid use disorder are frequently unable to control their use of opioids.

408. Opioid use disorder is a progressive disease which can result in permanent disability or premature death.

409. Opioid use disorder is considered a disability because it is an impairment that affects the brain and neurological functions and substantially impairs the major life activity of caring for oneself.

410. A person who is participating in a supervised rehabilitation program and is no longer engaged in illegal drug use is a person with a disability. 42 U.S.C. § 12210

411. The medical standard of care for opioid use disorder treatment is named "medication for addiction treatment" (also known as "medication for

opioid use disorder" or "MOUD").

412. There are three MOUD medications which have been approved by the Food and Drug Administration ("FDA"): methadone, buprenorphine, and naltrexone.

413. The duration and dosing of medication assisted treatment must be based on an individualized consideration of a person's medical needs by a trained medical professional.

414. Like medication-based treatment for any chronic disease, the medically necessary duration of medication assisted treatment is generally lengthy and, in some cases, lifelong.

415. Once a patient is being treated successfully for opioid use disorder through medication assisted treatment, forcibly ending that treatment is known to cause the patient to experience excruciating withdrawal symptoms and puts them at heightened risk for relapse, overdose, and death.

416. Since at least 2014, Cory Fairfield has suffered from opioid use disorder.

417. Prior to his incarceration in the Waukesha County Jail, Mr. Fairfield had also been diagnosed as suffering from migraine headaches, cervical spondylosis, anxiety, and psychophysiological insomnia.

7

418. On March 22, 2019, Cory Fairfield was arrested on a charge of operating a motor vehicle while intoxicated, booked into the Waukesha County Jail, and released on bail the same day.

419. On November 8, 2021, Cory Fairfield was sentenced in Waukesha County Case 2019 CT 320 as a result of his having pled guilty to third offense driving while intoxicated, in violation of Wis. Stat. § 346.63(1)(a), an unclassified misdemeanor.

420. Reserve Judge Dennis Moroney sentenced Mr. Fairfield to 160 days in jail, with credit for one day already served, and ordered that he was eligible for Huber privileges which would enable him to go to his job and to continue to attend the methadone clinic.

421. In November, 2021, Mr. Fairfield was in Phase Five at the Waukesha Comprehensive Treatment Center, a methadone clinic.

422. Most methadone clinics, including the Waukesha Comprehensive Treatment Center, utilize a "phases-of-treatment model."

423. The first three phases--Intensive Stabilization, Commitment, and Rehabilitation--provide intensive services and are designed to stabilize patients to allow them to attain an optimal level of productive functioning. Then, a

patient selects one of two tracks, the Medical Maintenance phase or the Tapering phase, followed by the Reinforcement phase.

424. A patient who is in Phase One is required to attend the methadone clinic every day and to drink his therapeutic daily dose of methadone there, in front of a staff member. Drug testing is done frequently.

425. As a patient progresses through the phases, he is allowed to report to the clinic less and less frequently, consuming one dose of methadone while he is on the premises and taking other doses home with him.

426. As a Phase Five patient, Mr. Fairfield attended the clinic only once each week, drinking his dose of methadone there that day and bringing six doses of methadone home for him to take one a day for the remainder of the week.

427. At the time of sentencing, the parties anticipated that Mr. Fairfield would be booked into the Waukesha County Jail on the day of sentencing and then would be transferred to the Rock County Jail where he would be placed on house arrest while wearing an electronic ankle monitor.

428. Judge Moroney had approved Mr. Fairfield's request to serve his time in Rock County.

429. Mr. Fairfield and his attorney believed that the process of being booked in and then transferred out would be accomplished on the day he entered the Waukesha County Jail, but that did not happen.

430. Mr. Fairfield was not transferred to Rock County Jail until November 29, 2021, three full weeks after the date of his sentencing.

431. When he was initially assessed during the booking process at Waukesha County Jail, Mr. Fairfield explained that he was taking methadone and sleeping medication.

432. During his initial assessment, he disclosed the name of his primary physician, Dr. Nathan Gill of Aurora Health in Walworth, and the medications he was currently taking: Amitriptyline 50 mg twice at night for insomnia, Rozerem 10 mg once at night for insomnia, Methadone 28 mg daily for opioid addiction, and Singulair 20 mg daily for allergies.

433. During the twenty-one days he was incarcerated in the Waukesha County Jail, Cory Fairfield received none of the medication that he had been currently taking to treat his opioid use disorder and his insomnia.

434. Mr. Fairfield was not permitted to ingest any of the doses of methadone that he had brought with him to the jail, nor was he permitted to

leave the jail to attend the Waukesha Comprehensive Treatment Center methadone clinic in which he was enrolled.

435. In response to his request for methadone, so that he could continue his recovery, Wellpath's nursing staff told Mr. Fairfield that methadone was not prescribed for inmates of the jail under any circumstances.

436. As Nursing Supervisor, it was the duty of James Matthews to oversee the health care of the inmates at Waukesha County Jail.

437. Nursing Supervisor Matthews did not contact Fairfield's primary physician or the pharmacy he used or the Waukesha Comprehensive Treatment Center in order to verify the conditions from which Fairfield had said that he suffered or the medications that Fairfield had said he was taking to treat those conditions, nor did he cause any of the nursing staff to make such inquiry.

438. Nursing Supervisor Matthews did not evaluate Fairfield for opioid use disorder nor cause him to be so evaluated.

439. Cory Fairfield was not immediately transferred to the Rock County Jail, and he also was not immediately approved for Huber privileges.

440. Without continuation of his methadone, he experienced painful and frightening withdrawal symptoms.

441. Mr. Fairfield had originally begun his use of opiates due to chronic pain in his neck and back following a car accident; when he was in recovery, not using other opiates, the methadone helped to ease that pain.

442. Without continuation of his methadone, Cory Fairfield experienced renewed pain in his neck and back.

443. Fairfield put in a request on November 10, 2021, to be allowed to attend the methadone clinic, but that request was denied.

444. Wellpath had the option to either arrange for Mr. Fairfield to attend daily appointments at the nearby methadone clinic (which was less than 3 miles from the jail) or to administer methadone to him at the jail, but it did neither.

445. Waukesha County jail inmates who suffered from ailments other than opioid disorder were taken to offsite medical appointments when needed.

446. Waukesha County jail inmates who suffered from chronic conditions other than opioid disorder and/or insomnia for which they required medication were permitted to take their medication.

447. Without continuation of his Amitriptyline and Rozerem for his insomnia, Mr. Fairfield was not able to sleep, and the pain he was experiencing was amplified.

448. After days without any significant sleep, Mr. Fairfield became desperate and agitated, exhausted and frightened, and was suffering from increasingly excruciating pain.

449. He was not receiving the medical care that he needed.

450. On November 11, 2021, in a misguided attempt to receive the medication and medical care that he needed, Cory Fairfield deliberately smacked his head repeatedly into a window in his cell.

451. Mr. Fairfield was subdued by being placed into the restraint chair, following which a mental health watch was begun.

452. The watch consisted of correctional staff looking in on Mr. Fairfield on regular intervals not more than 15 minutes apart and logging his demeanor and/or activity.

453. The watch log was begun on November 10 at 5:16 p.m. and continued until November 15 at 09:12 a.m.

454. The correctional staffed observed Cory Fairfield at least once every 15 minutes during this period, and throughout that four and one half day period of intensive observation, only four log entries that indicate that Fairfield appeared to be sleeping.

455. Mr. Fairfield does not believe that he slept at all during that period, but even if he was actually asleep on the four occasions when it was noted on the log that he appeared to be sleeping, the log entries show that he slept not at all on November 10 or 11, for less than an hour on November 12, for less than half an hour on November 13, for less than half an hour on November 14, and not at all while under observation on November 15.

456. Such a minimal amount of sleep over a period of days is an obvious red flag to medical personnel, and such a documented dramatic lack of sleep should have prompted medical attention, but it did not.

457. Defendants Lewandowski and Tamez were aware of Mr. Fairfield's physical and mental distress following the head- banging incident, but other than facilitating his restraint and establishing the 15 minute watch, they took no steps to help him get the medical care that he obviously needed.

458. Defendant Nurse Mary Tess-Barber saw Mr. Fairfield several times during his first few days of incarceration, and observed his obvious physical and emotional distress, but took no steps to alleviate it and disregarded his obvious medical needs.

459. Defendants Dr. Temu Brown and Nursing Supervisor James Matthews utterly disregarded Mr. Fairfield's medical needs, made no effort to

mitigate his distress, wantonly sabotaged his course of MOUD, and did not exercise medical judgment in doing so.

460. Defendants Wellpath, LLC, Dr. Temu Brown, and Nursing Supervisor James Matthews did not treat Mr. Fairfield's need for MOUD and his need for insomnia and anti-anxiety medications as they treated other inmates' needs for medications that were required to treat other medical conditions.

461. While he was an inmate at the Waukesha County Jail, Cory Fairfield was a qualified person with a disability; his opioid use disorder substantially impaired the major life activities of caring for himself, thinking, and interacting with others.

462. Defendants Sheriff Severson and Waukesha County subjected Cory Fairfield to discrimination in that they deprived Cory Fairfield of access to medical services that other inmates housed in the Waukesha County Jail, those who did not suffer from opioid disorder and did not need MOUD, received.

463. But for his disability, Sheriff Severson and Waukesha County would not have deprived Cory Fairfield of access to medical services.

464. The discrimination of Sheriff Severson and Waukesha County and the deliberate indifference of Wellpath, LLC, and Dr. Brown undercut the years of progress that Cory Fairfield had made in dealing with his opioid disorder.

465. After Cory Fairfield was released from Waukesha County Jail, he attempted to continue his methadone program but learned that he would have to start over at Phase One, reporting to the clinic daily.

466. Unable to do that, Mr. Fairfield relapsed into use of street opioids for a period of several months.

467. During that period of relapse, his health was impaired and he was at risk of overdose and death.

468. Fortunately, after some months of "street drug" use, Mr. Fairfield found the fortitude to begin his opioid therapy again.

469. He is no longer engaged in "street drug" use; he has enrolled in a methadone clinic that is closer to his home and place of employment, has successfully completed Phase One of his methadone treatment and is currently participating in Phase Two.

470. Neither Sheriff Severson nor Waukesha County maintained a policy that required adequate, non-discriminatory treatment for jail inmates who suffered from opioid use disorder.

471. Waukesha County and Wellpath, LLC, maintained a widespread practice of discontinuing methadone medication for inmates who had been receiving methadone therapy when they came to the Waukesha County Jail.

## V. VIOLATIONS OF LAW

### A. Claim against Waukesha County and Sheriff Severson Under the Americans with Disabilities Act

501. Waukesha County violated the rights of Cory Fairfield guaranteed by the American with Disabilities Act and discriminated against him on the basis of his disability when it deprived him of access to medical care for his opioid disorder while inmates with other chronic medical conditions had access to medical care and programs, in violation of 42 U.S.C. § 12112(b)(5)(A) *et seq*.

### B. Claim against Waukesha County and Sheriff Severson Under the Rehabilitation Act

502. Waukesha County violated the rights of Cory Fairfield guaranteed by the Rehabilitation Act and discriminated against him when it deprived him of access to medical care for his opioid disorder while inmates with other chronic medical conditions had access to medical care and programs, in violation of 29 U.S.C. § 701 *et seq*.

### C. Claim against Individual Defendants Lewandowski, Tamez, Brown, Matthews, and Tess-Barber under 42 U.S.C. § 1983

503. Defendants Lewandowski, Tamez, Brown, Matthews, and Tess-Barber violated the right of Cory Fairfield, secured by the Eighth and Fourteenth Amendments to the United States Constitution, to be free from cruel and unusual

punishment when they were deliberately indifferent to his serious medical needs.

### D. Section 1983 Claim against Waukesha County and Wellpath, LLC, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978)

504. Waukesha County and Wellpath, LLC, violated the right of Cory Fairfield, secured by the Eighth and Fourteenth Amendments to the United States Constitution, to be free from cruel and unusual punishment when each established policies and permitted widespread practices that were deliberately indifferent to his serious medical needs.

## VI. DAMAGES

601. As a result of Defendants' discrimination and deliberate indifference to his serious medical needs, the Plaintiff has suffered a violation of his constitutional rights, for which he seeks compensatory damages.

602. As a result of Defendants' discrimination and deliberate indifference to his serious medical needs, the Plaintiff has suffered extensive physical injury as well pain and emotional distress, for all of which he seeks compensatory damages in an amount deemed just by the Court.

18

Case 2:23-cv-00873-JPS    Filed 06/30/23    Page 18 of 20    Document 1

603. Because the conduct of the individual Defendants alleged herein was carried out with reckless disregard for the Plaintiff's fundamental rights, the Plaintiff also seeks an award of punitive damages against the individual Defendants to deter them, and others similarly situated, from similar wrongful acts in the future.

## VII. CONDITIONS PRECEDENT

701. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII. DEMAND FOR JURY TRIAL

801. The Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court grant judgment against the Defendant, awarding him:

901. Monetary damages in an amount that will fairly compensate the Plaintiff for his injuries, and

902. His costs, attorneys' fees, and litigation expenses as well as any further relief this Court deems just.

Dated this 30th day of June, 2023

Respectfully submitted,

Cory Fairfield, Plaintiff,

By

THE JEFF SCOTT OLSON LAW FIRM, S. C.
ATTORNEYS FOR PLAINTIFF
Jeff Scott Olson
State Bar Number 1016284
1025 Quinn Drive, Suite 500
Waunakee, WI 53597
Phone   (608) 283-6001
Fax     (608) 283-0945
Email   JSOlson@scofflaw.com


/s/ *Jeff Scott Olson*
_____
Jeff Scott Olson