# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CORY FAIRFIELD,<br><br>              Plaintiff,<br><br>v.<br><br>WAUKESHA COUNTY, ERIC SEVERSON, WELLPATH LLC, TRACY J. LEWANDOWSKI, FNU TAMEZ, TEMU BROWN, JAMES MATTHEWS, and MARY TESS-BARBER,<br><br>              Defendants. | Case No. 23-CV-873-JPS<br><br><br><br>**ORDER** |

       Plaintiff Cory Fairfield ("Plaintiff") sues Defendants Waukesha County, Eric Severson, Tracy J. Lewandowski, and FNU Tamez (the "County Defendants"), together with Wellpath LLC ("Wellpath"), Temu Brown, James Matthews, and Mary Tess-Barber (the "Wellpath Defendants"), alleging, inter alia and as pertinent to the instant motion, a *Monell*[1] claim under 42 U.S.C. § 1983. ECF No. 1. Before the Court is Plaintiff's motion to compel discovery responses from both the County Defendants and the Wellpath Defendants. ECF No. 35. The motion is fully briefed, ECF Nos. 35, 40, 42, 43, and will be granted on the terms set forth herein.

**1.    LEGAL STANDARD**

       The Federal Rules of Civil Procedure make clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any

---

[1] *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant in a discovery context if it is relevant to the subject matter of the litigation as Rule 26(b)(1) states, not just the particular issues presented in the pleadings." *Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130, U.A.*, 657 F.2d 890, 903 (7th Cir. 1981).

"District courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646–47 (7th Cir. 2001) and *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993)). Accordingly, "[t]he district court may grant or deny the motion in whole or in part, [or] . . . the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed. R. Civ. P. 37(a)(4)(B), (C)).

"Although there is a strong public policy in favor of disclosure of relevant materials, Rule 26(b)(2) . . . empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Patterson*, 281 F.3d at 681 (quoting Fed. R. Civ. P. 26(b)(2)). "Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Id.* (quoting *Rowlin v. Alabama*, 200 F.R.D. 459, 461 (M.D. Ala. 2001), Fed. R. Civ. P. 26 advisory committee notes, and 8 Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE § 2008.1 (1994)).

2.  **RELEVANT FACTS**

Since at least 2014, Plaintiff has suffered from opioid use disorder. ECF No. 1 at 7. In November 2021, Plaintiff was in "Phase Five" of treatment at the Waukesha Comprehensive Treatment Center, which administers methadone as a treatment for opioid use disorder. *Id.* at 8. Methadone has been approved by the Food and Drug Administration to treat opioid use disorder. *Id.* at 6–7.

On November 8, 2021, Plaintiff was sentenced to 160 days in jail after pleading guilty to operating a motor vehicle while intoxicated. *Id.* at 8. Plaintiff was booked into the Waukesha County Jail, where he was incarcerated for twenty-one days, prior to being transferred to another facility. *Id.* At that time, Waukesha County contracted with Wellpath for Wellpath to provide medical care to inmates at the Waukesha County Jail. *Id.* at 3.

When Plaintiff was initially assessed during the booking process at the Waukesha County Jail, he explained that he took methadone and sleeping medication and disclosed the name of his primary physician. *Id.* at 10. During the twenty-one days that he was at the Waukesha County Jail, however, Plaintiff received none of the medication that he had been taking to treat his opioid use disorder and insomnia. *Id.*

Specifically as to methadone, Plaintiff was not permitted to take any of the doses of methadone that he had brought with him to the jail, nor was he permitted to leave the jail to attend treatment at the methadone clinic. *Id.* at 10–11. In response to his request for methadone, Wellpath's nursing staff told Plaintiff that methadone was not prescribed for inmates of the jail under any circumstances. *Id.* at 11. Wellpath staff did not contact Plaintiff's physician, pharmacy, or methadone clinic to verify Plaintiff's conditions or

Page 3 of 18
Case 2:23-cv-00873-JPS   Filed 04/16/24   Page 3 of 18   Document 45

medications, nor was Plaintiff evaluated for opioid use disorder. *Id.* Plaintiff's requests to attend his methadone clinic were denied. *Id.* at 12. Plaintiff thus experienced painful and frightening withdrawal symptoms. *Id.* at 11. Plaintiff asserts in his *Monell* claim that Defendants Waukesha County and Wellpath "established policies and permitted widespread practices that were deliberately indifferent to . . . serious medical needs" in violation of the Eighth and Fourteenth Amendments. *Id.* at 18.

The instant motion to compel centers on three disputed discovery requests: two to the Wellpath Defendants and one to the County Defendants. The two requests to the Wellpath Defendants read:

**Request for Production # 5**:

If your response to Request for Admission # 27 was anything other than "Admit," please provide the medical records of all Waukesha County Jail inmates to whom methadone was administered during 2021.

[Request for Admission # 27 asked, "Admit that methadone was not prescribed for inmates of the Waukesha County Jail throughout 2021"; the Wellpath Defendants responded: "Objection, vague and appears to attempt to elicit protected health information of third parties which would violate HIPPA [sic]. These defendants deny as Plaintiff was an inmate of the Waukesha County Jail and Plaintiff alleges he was prescribed methadone in 2021." ECF No. 37 at 2; ECF No. 37-2 at 10–11.]

**Request for Production # 6**:

The medical records created and/or maintained by employees of the entity that was identified in response to Interrogatory # 1 [Wellpath, LLC] of every Waukesha County Jail inmate who identified himself or herself as a person who was participating in a methadone treatment program at the time he or she was booked in to the Waukesha County Jail for the time period January 1, 2019–December 31, 2022.

ECF No. 37-4 at 4–5. During subsequent conversations, counsel agreed to limit the timeframe for Request No. 6 to January 1, 2019 through November 30, 2021. ECF No. 37 at 2–3.

In November 2023, the Wellpath Defendants initially objected to both requests as, in pertinent part, "vague" and as seeking information that, if disclosed, would violate the Health Insurance Portability and Accountability Act ("HIPAA"). ECF No. 37-4 at 5. The HIPAA objection led the parties to negotiate and submit a stipulated proposed HIPAA protective order, which the Court entered in February 2024. ECF No. 36 at 2–3; ECF No. 34.

The Wellpath Defendants later supplemented their objections in March 2024. ECF No. 37-4 at 4–5; ECF No. 37 at 3. To both, they added the objection that the requests are not "HIPAA compliant . . . given the nature of the documents requested." ECF No. 37-4 at 5–6. To Request No. 6, they added objections on the basis of overbreadth, burden, and proportionality, as well as an objection that self-identification of participation in a methadone treatment program "is not a reliable indicator of someone's actual participation in such a program, which requires confirmation from a medical provider." *Id.* at 5.

The request to the County Defendants reads:

> **REQUEST NO. 1:** Intake and/or booking records created by Waukesha County Jail employees during the period beginning January 1, 2020 through November 30, 2021, of each inmate who identified himself/herself as taking prescribed Methadone at the time he/she was admitted to the Waukesha County.

ECF No. 37-5 at 1–2. The County Defendants objected on the basis of overbreadth, proportionality, and relevance, noting as well that "there is no

Page 5 of 18
Case 2:23-cv-00873-JPS   Filed 04/16/24   Page 5 of 18   Document 45

reasonable method for identifying inmates who identify himself/herself as methadone users because Waukesha County did not track this information within the timeframe of Plaintiff's request." *Id.* at 2. In response to the latter objection, Plaintiff submits his own Waukesha County Jail file, provided to him by the County Defendants during discovery, showing printed medical intake questions as to prescribed medications, and his responses regarding methadone. ECF No. 37 at 5–6 (citing ECF No. 37-6).

3. **ANALYSIS**

In response to the instant motion to compel, the County and the Wellpath Defendants largely reiterate their discovery objections. That is, they argue that the requested records are irrelevant and that production would be overbroad, unduly burdensome, and disproportionate to the needs of the case. ECF No. 40; ECF No. 42 at 5–10. The Wellpath Defendants also assert that the requested records are subject to "more stringent" protections than HIPAA under "HIPAA 'Part 2.'" ECF No. 42 at 2 (citing 42 U.S.C. § 290dd-2 and 42 C.F.R. § 2.61). The Court takes up each issue in turn, though it addresses overbreadth, burden, and proportionality last.

3.1 **Relevance**

At the outset, the records that Plaintiff seeks are plainly relevant to his *Monell* claim. In *Hildreth v. Butler*, the Seventh Circuit held that the plaintiff failed to establish his *Monell* claim in part because he proffered only "three personal experiences" of unconstitutional medical care. 960 F.3d 420, 427 (7th Cir. 2020)). Instead, "what [wa]s needed [wa]s evidence that there [wa]s a true municipal policy at issue, not a random event." *Id.* at 426–27 (quoting *Grieveson v. Anderson*, 538 F.3d 763, 744 (7th Cir. 2008) and citing *Winkler v. Madison County*, 893 F.3d 877, 902 (6th Cir. 2018) (affirming summary judgment in county's favor when plaintiff "discusses only [her

son's] treatment, and therefore cannot establish that the County had a custom of deliberate indifference to the serious healthcare needs of all the inmates"); *Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 944 (11th Cir. 2017) (holding plaintiff failed to show a custom of providing inadequate medical care when plaintiff's claims rest only on one inmate's experiences); *Payne v. Sevier County*, 681 F. App'x 443, 446–47 (6th Cir. 2017) (holding "five instances of alleged misconduct, over three months, all involving the plaintiff himself is not enough to prove a custom"); *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015) (holding allegations "limited to the events surrounding the plaintiffs" are insufficient to establish a widespread practice or custom)).

Thus, as the Court observed when it entered the HIPAA protective order, the Seventh Circuit counseled in *Hildreth* that one way to demonstrate a "widespread practice or custom" of unconstitutional medical care for purposes of *Monell* liability is to "provide[] evidence that . . . other inmates" experienced the same unconstitutional medical care as the plaintiff. ECF No. 34 at 2 (quoting *Hildreth*, 960 F.3d at 427); *see also Reed v. Wexford Health Sources, Inc.*, No. 20-CV-01139-SPM, 2021 WL 5578076, at *2 (S.D. Ill. Oct. 19, 2021) ("Because Plaintiffs [estate] have asserted a *Monell* claim against Wexford for widespread practices of providing inadequate care, discovery in this case will not be limited to only the protected health information of [decedent].").

Plaintiff's *Monell* claim, moreover, is not based on a mere "fishing expedition," as the County Defendants argue, ECF No. 40 at 4 (citing *E.E.O.C. v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996)), nor is it a search divorced from concrete allegations in the case. Plaintiff pleads that Wellpath staff informed him that methadone was not prescribed for

Page 7 of 18
Case 2:23-cv-00873-JPS    Filed 04/16/24    Page 7 of 18    Document 45

inmates of the jail under any circumstances. ECF No. 1 at 11. Any suggestion by the County or Wellpath Defendants that the responsive records are irrelevant is therefore squarely incorrect.

For example, the County Defendants argue that the request issued to them—for records regarding inmates who "identified himself/herself as taking prescribed Methadone"—seeks irrelevant documents because the inmate may self-report as taking methadone when, in fact, they do not. ECF No. 40 at 4. Similarly, the Wellpath Defendants assert that the request may sweep in arrestees—in lieu of inmates—who may "bail[] out of jail before their medication can be verified" and thus "there would be no need to provide them methadone." ECF No. 42 at 9.

However, there must be some starting point to search for and identify inmates—and their associated medical files—for whom methadone treatment may have been necessary. In the Court's view, the request to the County Defendants is relevant to the *Monell* claim for two reasons. First, it culls the list of individuals for whom methadone treatment was prescribed prior to booking (and therefore limits the number of documents responsive to Request No. 6 to the Wellpath Defendants).[2] Second, it generates a list of individuals to compare against those who may (or may not) have been administered methadone at the Waukesha County Jail (as addressed in Request No. 5 to the Wellpath Defendants), such that Plaintiff's counsel

---

[2]The Court notes, however, that the request to the County Defendants covers January 1, 2020 through November 30, 2021, while the associated request to the Wellpath Defendants covers January 1, 2019 through November 30, 2021 (as modified by counsel). As noted *infra* Section 3.3, the parties must resolve this discrepancy before proceeding with the sampling procedure(s) and/or full production that the Court orders. Plaintiff already represents that he is willing to "reduce [his] request" in order to reconcile the two timeframes. ECF No. 35 at 9.

may then determine how many individuals reported methadone prescriptions at booking and subsequently did or did not receive treatment, or what otherwise transpired. The Wellpath Defendants' concern about overinclusion of arrestees is ameliorated by using the names of those who self-identified to pull medical records, and then reviewing the medical records to see what transpired after the self-identification. Presumably, if an inmate self-identified as having been prescribed methadone at booking, any verification of that self-identification—and whether methadone was ultimately administered at the Waukesha County Jail—will be included in the associated medical files.

### 3.2. HIPAA "Part 2"

The Court next addresses the Wellpath Defendants' contention that the records subject to Plaintiff's request are subject to "HIPAA 'Part 2,'" which is "the basis of the[ir] supplemental objection" related to HIPAA. ECF No. 42 at 2.[3] The Wellpath Defendants argue that the records are subject not only to HIPAA, but also to the more stringent protections set forth in 42 U.S.C. § 290dd-2 and 42 C.F.R. § 2.61, known as "HIPAA 'Part 2'" or the "Public Health Service Act" ("PHSA"). *Id.* The PHSA's confidentiality provisions "cover any information (including information

---

[3]The Court will not wade into the issue of whether the supplemental "HIPAA 'Part 2'" objection was waived, given the sensitivity and privacy concerns that the objection raises. ECF No. 35 at 8 (arguing that the Wellpath Defendants waived the supplemental objections by not raising them in their original discovery responses). The Court notes only its frustration that the Wellpath Defendants negotiated and jointly filed a HIPAA protective order with the Court, but—in utter dereliction of their duty of candor to the Court—failed to note these provisions at that time, choosing instead to raise them months later.

The Court will further excuse the Wellpath Defendants' waiver of the overbreadth objections given its conclusion, *infra* Section 3.3, that the subject requests are not overbroad.

on referral and intake) about patients receiving diagnosis, treatment, or referral for treatment for a substance use disorder created by a part 2 program." 42 C.F.R. § 2.12(e)(1). Federal assistance to the program is required for PHSA coverage. 42 C.F.R. § 2.12(e)(2); *see also* 42 U.S.C. § 290dd-2(a) (the PHSA covers "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance use disorder education, prevention, training, treatment, rehabilitation, or research, which is *conducted, regulated, or directly or indirectly assisted by any department or agency of the United States*") (emphasis added).

Section 2.11 of the regulations defines "patient" as "any individual who has applied for or been given diagnosis, treatment, or referral for treatment for a substance use disorder at a part 2 program." 42 C.F.R. § 2.11. Section 2.11 defines "program" as

(1) An individual or entity (other than a general medical facility) who holds itself out as providing, and provides, substance use disorder diagnosis, treatment, or referral for treatment; or

(2) An identified unit within a general medical facility that holds itself out as providing, and provides, substance use disorder diagnosis, treatment, or referral for treatment; or

(3) Medical personnel or other staff in a general medical facility whose primary function is the provision of substance use disorder diagnosis, treatment, or referral for treatment and who are identified as such providers.

*Id.*

Although Plaintiff pleads in his complaint that the County Defendants received federal funds in 2021, ECF No. 1 at 3, the County Defendants expressly "den[ied]" "receiv[ing] federal funds for use in

operating and/or maintaining the Waukesha County Jail" in 2021 in response to Plaintiff's requests for admission. ECF No. 44-1 at 2. Plaintiff does *not* plead, however, that the County Defendants used federal funds to pay the Wellpath Defendants to provide services at the Waukesha County Jail. And neither the record nor the Wellpath Defendants proffer any evidence suggesting that the County Defendants used federal funds to pay the Wellpath Defendants, or that the Wellpath Defendants independently received any federal funds. This immediately calls into question the PHSA's application to the Wellpath Defendants, who invoke its protections. *See Beard v. City of Chicago*, No. 03 C 3527, 2005 WL 66074, at *4 (N.D. Ill. Jan. 10, 2005) (holding that the proponent of PHSA protection bears the burden of showing the statute applies). Nonetheless, the PHSA's regulations defining when a program is considered to be federally assisted are broad; "[a] program is considered to be federally assisted if," in pertinent part,

> (4) [i]t is supported by funds provided by any department or agency of the United States by being:
>
>   (i) A recipient of federal financial assistance in any form, including financial assistance which does not directly pay for the substance use disorder diagnosis, treatment, or referral for treatment; or
>
>   (ii) Conducted by a state or local government unit which, through general or special revenue sharing or other forms of assistance, receives federal funds which could be (but are not necessarily) spent for the substance use disorder program[.]

42 C.F.R. § 2.12.

Assuming, arguendo, that the Wellpath Defendants would be considered recipients of federal funding based on their contract arrangement with the County Defendants *if* the County Defendants are

recipients of federal funding, the record does not support that the County Defendants are recipients of federal funding. Based on the County Defendants' response to the request for admission alone, and absent further allegations by Plaintiff and/or any other showing of federal conduct or regulation, the PHSA does not apply to the Wellpath Defendants in this scenario to bar production of the records. *See Beard*, 2005 WL 66074, at *5 ("Defendant has made no showing of such financial support here, and in the absence of evidence, we will not assume what the defendant has failed to prove.") (citing *Ley v. Blose*, 698 N.E.2d 381, 383 & n.1 (Ind. Ct. App. 1998)).

Moreover, even if the Waukesha County Jail did receive federal funding and those funds were used to pay the Wellpath Defendants (or the Wellpath Defendants independently received federal funds), the PHSA does not bar production of the records for the additional reason that the PHSA "applies only to those records maintained in connection with the performance of any 'program or activity' relating to substance abuse education, prevention, training, treatment, rehabilitation or research." *Beard*, 2005 WL 66074, at *5 (quoting 42 U.S.C. § 290dd-2(a)). The Wellpath Defendants have offered "no evidence . . . that they fall within any of the regulatory definitions of 'program,'" which are set forth above. *Id.* Specifically, they have not suggested that Wellpath holds itself out as providing substance use disorder diagnosis, treatment, or referral; that Wellpath actually does provide those services; that Wellpath contains an identified unit that holds itself out as providing those services or actually provides them; or that Wellpath employs staff whose primary function is to provide those services. 42 C.F.R. § 2.11.

Instead, ostensibly, the Wellpath Defendants' work at the Waukesha County Jail "deals with an array of medical issues other than substance abuse." *Beard*, 2005 WL 66074, at *5. In *Beard*, the Northern District of Illinois found that fact, combined with the lack of a more "identified unit [within the] general medical facility" that deals specifically with substance abuse and the lack of medical personnel whose "primary function" is the provision of substance abuse treatment, sufficient to exclude the City of Chicago Fire Department's medical unit from the regulatory definition of "program." *Id.*; *see also Ctr. for Legal Advoc. v. Earnest*, 320 F.3d 1107, 1111–12 (10th Cir. 2003) (hospital emergency room is not a covered "program" because its "primary function" is not the provision of drug and alcohol treatment and it "has [not] held itself out to the community as providing such services") (citing 42 C.F.R. § 2.12(e)(1) (2001)). Thus, the PHSA does not bar production of the requested records in this case.

If the parties later determine that the PHSA does apply to bar production of the records,[4] prior to returning to the Court for another protective order or engaging in further motion practice, they should meet and confer on a manner to redact or remove "patient identifying information" from the records. *Beard*, 2005 WL 66074, at *5. The PHSA's protections are "limited to those records that '[w]ould identify a patient as an alcohol or drug abuser either directly, by reference to other publicly available information, or through verification of such an identification by another person.'" *Id.* (quoting 42 C.F.R. § 2.12(e)(3) ("[t]he restrictions on disclosure apply to any information which would identify a patient as an

---

[4] For example, if the County Defendants change their position as to receipt of federal funding.

Page 13 of 18
Case 2:23-cv-00873-JPS   Filed 04/16/24   Page 13 of 18   Document 45

alcohol or drug abuser")); *see also McEvoy v. Hillsborough County*, No. 09-CV-431-SM, 2011 WL 1813014, at *9 (D.N.H. May 5, 2011) (ordering under the PHSA that "any records . . . disclosed shall be redacted to obscure any information that might identify any individual as the person to whom the record applies"); 42 C.F.R. § 2.12(e)(3) (eff. Apr. 16, 2024) (retaining this limitation). Such redactions could be performed in a manner that still allows the list of inmates who self-identified as methadone recipients to be used to cull the responsive medical records, so long as the culling is done prior to disclosure to Plaintiff's counsel. The Court need not delve further into this issue because it has determined at this juncture that the PHSA does not apply to protect Wellpath Defendants from being compelled to disclose the requested documents.

### 3.3 Overbreadth, Burden, and Proportionality

As the Court explained above, *see supra* Section 3.1, it views the subject discovery requests as already containing some amount of culling. Specifically, the County Defendants' response to the request issued to them will inform which records are responsive to Request No. 6 to the Wellpath Defendants.

However, the Court appreciates the County Defendants' concerns about burden. The County Defendants represent that Waukesha County did not begin collecting intake forms in an electronic, searchable format until 2023. ECF No. 40 at 2. Thus, to collect the documents that Plaintiff requests, "someone would need to pull and review every intake file (estimated at 18,000 intakes) to determine if the inmate identified him/herself as being prescribed Methadone." *Id.* (citing ECF No. 41 at 2–3). Further, "[t]he relevant inmate files are maintained alphabetically in paper form only" and the records inside each file "are not organized by subject or

Page 14 of 18

Case 2:23-cv-00873-JPS    Filed 04/16/24    Page 14 of 18    Document 45

year and therefore there is no effective or efficient way to search the records for medications disclosed in intake." *Id.* The County Defendants aver that an attorney would need to supervise this task, and that it will "require hundreds of hours and substantial expense." *Id.* The Wellpath Defendants echo these concerns, adding that while the medical intake forms are scanned electronically into the Wellpath system, the scans are not "searchable." ECF No. 42 at 6 (citing ECF No. 41 at 2).[5]

Countervailing these concerns, however, is Plaintiff's need for the records to establish his *Monell* claim and the relevance of the records to that claim, together with the public's interest in ascertaining the scope of any alleged wrongs. *See supra* Sections 1, 3.1. Moreover, the Court does not find the subject requests either overly broad or disproportionate to the needs of the case. Plaintiff identified a narrow time frame for his otherwise narrowly tailored requests and, but for the storage and archiving methods utilized by the County and Wellpath Defendants, his requests would not be burdensome.[6]

---

[5]The Wellpath Defendants further add to these concerns with their assertion that the HIPAA protective order entered by the Court is not a carte blanche for the disclosure of all of the medical records that Plaintiff requests. *See* ECF No. 42 at 3. They correctly note that HIPAA regulations allow the disclosures of protected health information only to "the *minimum necessary* to accomplish the intended purpose of the use, disclosure, or request." *Id.* (quoting 45 C.F.R. § 164.502(b)(1)) (emphasis added). However, as with their contentions regarding the PHSA, the Wellpath Defendants ignore the statutory language stating that the "[m]inimum necessary" requirement does not apply to disclosures required by law, which under 45 C.F.R. § 164.512(a) includes judicial proceedings with an appropriate protective order under § 164.512(e). 45 C.F.R. § 164.502(b)(2)(v).

[6]Plaintiff points to *Awalt v. Marketti*, ECF No. 35 at 10, where the court found the burden of wholesale review and production of inmate files not an "*undue* burden[]" "[d]ue to the fact that *Monell* claims implicate a potentially large number of events taking place in an organization over a period of time." No. 11 C 6142, 2012 WL 6568242, at *7 (N.D. Ill. Dec. 17, 2012). However, there, the

After balancing these competing concerns, the Court has determined that the County Defendants must, *at a minimum*, review and produce a "representative sample" of their inmate intake files. *Groark v. Timek*, No. CIV. 12-1984 RBK/JS, 2014 WL 3556367, at *10 (D.N.J. July 18, 2014). The representative sample shall encompass records from either January 1, 2019 or January 1, 2020 through November 30, 2021, with the timing discrepancy between Request No. 6 to the Wellpath Defendants and the request to the County Defendants to be resolved between the parties. *See supra* note 2. The Wellpath Defendants shall then use that representative sample to review and produce records responsive to Request No. 6. Similarly, as to Request No. 5, the Wellpath Defendants must review a representative sample of medical records for all inmates and produce those within the sample where methadone was administered.

Such representative sample shall preferably be determined through the "judgment sampling" methodology, which has "been recognized as reliable in . . . cases regarding correctional practices." *Lewis v. Cain*, No. CV 15-318-SDD-RLB, 2022 WL 1517156, at *3 & n.27 (M.D. La. Feb. 17, 2022) (citing *Braggs v. Dunn*, 317 F.R.D. 634, 645–46 (M.D. Ala. 2016) and *Dockery v. Fisher*, 253 F. Supp. 3d 832, 844 (S.D. Miss. 2015)). "Judgment sampling," instead of using "random number generators to select samples," allows samples to be chosen "based on the expertise and judgment of a subject matter expert with knowledge of the system or process being assessed." *Dockery*, 317 F.R.D. at 844 (citation omitted). "The goal is to obtain a sample which is as broad, rich, and representative of the diversity of operational

---

institution held 15,000 files dating back to the mid-1980s, and Plaintiff's request only covered a five-year period and "roughly 1,000 medical files." *Id.* Thus, the circumstances here as to burden differ substantially.

conditions as possible." *Id.* (citation omitted). Judgment sampling, instead of random sampling, will also aid in avoiding contentions that too "small [a] set of sample files is not methodologically sound," or otherwise insufficient to establish a *Monell* claim. *DeLeon-Reyes v. Guevara*, No. 18 C 1028, 2021 WL 3418856, at *6 (N.D. Ill. Aug. 5, 2021) (analyzing confidence levels proffered by consulting experts on sample size).

If judgment sampling is employed, the parties may each retain a subject matter expert on the issue, and the experts may then assist each party in meeting and conferring on an appropriate representative sample, or the parties may agree to retain one expert and split the cost of that expert's fees. To be clear, there will be no cost-shifting as to the costs of producing the representative sample records. Only if the parties, with the assistance of one agreed-upon expert or their respective experts, cannot reach an agreement on an appropriate representative sample may they then return to the Court for assistance in determining an appropriate representative sample. Any return to the Court must include any expert(s)'s opinions on the matter. *See, e.g.*, *Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 318, 323 (D.N.J. 2015) (reviewing expert reports on appropriate representative sample after meet-and-confer agreement could not be reached); *Lewis*, 2022 WL 1517156, at *4 (applying expert judgment sampling at discovery stage).

Alternatively, if the parties are able to stipulate as to the above concerns regarding the use of random sampling, they may dispense with judgment sampling, including the hiring of experts to design protocols for judgment sampling, and they may use an agreed-upon random sampling protocol. That protocol may involve random sampling in waves, as it may only require a certain number of random sample productions for a pattern

or practice of not administering methadone to inmates who need it to emerge (or not to emerge).

Similarly, if the County and Wellpath Defendants determine that the cost of employing either judgment sampling or random sampling is *higher* than reviewing all of the inmate files and producing all responsive records, then they may instead simply comply with the requests in full. For these reasons, the motion to compel will be granted, with the Court's proposed alternatives to be considered in order to reduce costs.

### 4. CONCLUSION

For the reasons and on the terms set forth above, the Court grants Plaintiff Cory Fairfield's motion to compel.

Accordingly,

**IT IS ORDERED** that Plaintiff Cory Fairfield's motion to compel, ECF No. 35, be and the same is hereby **GRANTED** on the terms described herein.

Dated at Milwaukee, Wisconsin, this 16th day of April, 2024.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge